**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ANNA LOPEZ,**<br><br>            **Plaintiff,**<br><br>     **v.**<br><br>**BOARD OF EDUCATION OF THE CITY OF CHICAGO,**<br><br>            **Defendant.** | **Case No. 11 C 8118**<br><br>**Hon. Harry D. Leinenweber** |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Board of Education of the City of Chicago's Motion for Summary for Judgment. For the reasons stated herein, the Court grants the Motion.

### I. BACKGROUND

Plaintiff Anna Lopez (hereinafter, "Plaintiff" or "Lopez") was employed by Defendant Board of Education of the City of Chicago ("the Board") from 1982-2010. Beginning in 2000, Plaintiff worked as a payroll clerk in the Board's payroll department.

In approximately May 2006, Angela Alonzo ("Alonzo") became the Director of the payroll department. As the new Director, Alonzo sought to increase the efficiency within the department. At the time Alonzo started, the payroll department was divided into four units: (1) systems and administration; (2) compliance (3) customer

service and (4) time attendance correction.  Plaintiff was a member of the compliance unit.

In approximately July 2008, Alonzo hired Donna Guzman ("Guzman") to assist her in increasing the efficiency of the payroll department and offer suggestions for further improvement. One of the units Guzman evaluated was the compliance unit.  When Guzman began her evaluation, Plaintiff's primary duties were processing payments owed to families of deceased employees, check reversals, issuing refunds to employees, suspending garnishment deductions, and other miscellaneous filing.

After completing her evaluation, Guzman found the compliance unit overstaffed, inefficient, and, occasionally, untimely.  As a result of this assessment, Guzman altered the duties amongst the employees within the unit to ensure all employees had sufficient work for a seven-hour day.  At this time, Guzman assigned child support processing garnishments to Plaintiff.

In early 2009, Guzman and Alonzo began to conduct performance reviews for every employee in the compliance unit to assess each employee's performance and efficiency.  During Plaintiff's performance review, Alonzo notified Plaintiff that she was failing to meet her goals regarding the processing of child support orders. Allegedly, Alonzo offered suggestions for improvement and warned Plaintiff that if her performance did not improve, disciplinary actions could be taken.

In June 2009, Alonzo issued a cautionary notice to Plaintiff for failing to meet performance expectations. The notice provided suggestions for improvement and stated that if Plaintiff failed to follow these instructions she would be subject to discipline.

Also, in June 2009 it was brought to Plaintiff's attention that an employee's check erroneously had wages garnished for child support payments. Plaintiff acknowledges she was aware of this issue, but contends the error was due to an intern providing her the wrong social security number. Regardless, Plaintiff admits the employee's check was deducted a total of three times before she suspended the garnishment. Shortly after this incident, Plaintiff was suspended for one day for the stated reasons of insubordination and lack of efficiency.

In November 2009, a second incident occurred where Plaintiff processed child support garnishments incorrectly and failed to take the appropriate remedial steps before multiple deductions had been removed from the employee's paychecks. In December 2009, Alonzo suspended Plaintiff for 10 days. The reasons stated for the suspension included failing to take corrective measures after being notified of the two incorrect child support garnishments.

Around the time of Plaintiff's suspension, Thomas Miller ("Miller") became Plaintiff's direct supervisor. Despite this change, complaints continued regarding Plaintiff's work performance. Specifically, in February 2010 Miller requested a

list of outstanding child support orders Plaintiff needed to enter. After he received the list, he informed Plaintiff that she needed to be caught up with the orders by February 18, 2010, Plaintiff's last day before an approved vacation. (Plaintiff disputes the fact that Miller informed her she needed to complete the outstanding orders, but admits that around this time he requested a list of outstanding orders.) On February 18, 2010, Plaintiff failed to complete the outstanding orders and failed to notify Miller that such orders were incomplete. Because of this, Miller had to have a different employee work overtime to complete the outstanding orders. As a result of this incident, Alonzo suspended Plaintiff for 15 days.

After Plaintiff's third suspension, she continued to experience problems at work. In May 2010, Miller noticed Plaintiff was still struggling to calculate deceased payouts correctly. Because of this, he provided Plaintiff one-on-one training and when he discovered errors, he met with Plaintiff to explain why the errors occurred. Despite this training, Plaintiff continued to submit calculations for deceased payouts with the same errors. Notably, in May 2010, Plaintiff submitted eleven deceased payout calculations to Miller for his review and approval. Upon review, Miller discovered that seven of the eleven calculations had errors that would have resulted in incorrect amounts being paid.

On July 26, 2010, the Board terminated Plaintiff's employment. On May 19, 2011, Plaintiff filed a claim with Equal Employment Opportunity Commission (the "EEOC") alleging that her termination was the result of age discrimination.

On November 15, 2011, Plaintiff filed suit in this Court. In her Complaint, Plaintiff claims that the Board discriminated against her on the basis of age in violation of 29 U.S.C. § 621. On November 26, 2012, the Board filed its Motion for Summary Judgment.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it could affect the outcome of the case. *Id.* If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To establish a genuine issue of fact, the non-moving party "must do more than show that there is some metaphysical doubt as the material facts." *Sarver v. Experian Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004).

## III. DISCUSSION

Plaintiff's Complaint alleges that the Board discriminated against her in violation of Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621. The Board argues it is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case.

The ADEA makes it unlawful for an employer to "discharge . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a). To sustain a claim under the ADEA, a plaintiff must prove that age was a determining factor in the employer's decision to fire him. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 (7th Cir. 1992). While age does not need to be the sole reason motivating an employer's decision to terminate, a plaintiff must establish that she would not have been fired but for the employer's intent to discriminate on the basis of age. *Id.* A plaintiff may prove age discrimination using either the "direct method" or the "indirect method." *See, e.g., Cerruti v. BASF Corp.,* 349 F.3d 1055, 1060–61 (7th Cir. 2003).

### A. Direct Method

Under the direct method, a plaintiff must present direct or circumstantial evidence that establishes age was a determining factor in the employer's decision to terminate the plaintiff.

*McCoy*, 957, F.2d at 371. Such evidence could include admissions or near-admissions by the employer that its termination decision was based on plaintiff's age. *See Lindsey v. Walgreen Co.*, 08 C 3547, 2009 WL 4730953 at * 3 (N.D. Ill. Dec. 8, 2009) (explaining that an example of direct proof could be a statement from an employer such as "You're too old to work here.").

Plaintiff concedes that she has never heard anyone say her suspensions or termination were motivated even in part because of her age. Pl.'s L.R. 56.1(B) Statement of Material Facts at 31. She also admits that other Board employees have testified that the disciplinary actions Alonzo enforced against Plaintiff were not because of her age. *Id.* Indeed, Plaintiff fails to present any direct or circumstantial evidence that could establish age was a determining factor in the Board's decision to terminate her. Thus, Plaintiff's age discrimination claim under the direct method fails.

### B. Indirect Method

Under the indirect, burden-shifting method originally set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff must first establish a *prima facie* case of discrimination in order to proceed. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A *prima facie* case under the ADEA is established by showing that (1) plaintiff is a member of the protected class (age 40 to 70); (2) plaintiff was performing her job sufficient enough to meet her

employer's legitimate expectations; (3) plaintiff suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment than the plaintiff. *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 477 (7th Cir. 2010).

Here, it is undisputed that Plaintiff was over 40 years old at the time she was terminated and a member of the protected class. Additionally, there is no doubt Plaintiff suffered an adverse employment action when the Board terminated her in July 2010. Accordingly, the remaining elements Plaintiff must establish to avoid summary judgment are that her job performance met the Board's legitimate expectations and that similarly situated employees under the age of 40 received more favorable treatment than she did.

The Board argues Plaintiff has failed to establish these elements. Not surprisingly, Plaintiff disagrees. First, she contends the Board's expectations were not "objectively reasonable" and not "adequately communicated" to her. Next, she claims to have satisfied those expectations which were reasonable. Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 8. Finally, Plaintiff argues that a younger, similarly situated employee, Toni Terry, was treated more favorably than she was. Plaintiff claims these facts preclude summary judgment.

### *1. Plaintiff's Job Performance and the Board's Expectations*

When determining whether a plaintiff's job performance has met an employer's expectations, the Seventh Circuit has held "the proper inquiry mandates looking at [the employee's] job performance through the eyes of her supervisors at the time of her . . . termination." *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 689 (7th Cir. 2008). While Plaintiff contends her performance before Alonzo became Director of the payroll department is evidence relevant to establishing her performance at the time of her termination, such an argument is contrary to the Seventh Circuit's express instruction in *Gates*. Accordingly, the Court does not find this evidence persuasive in demonstrating that Plaintiff satisfied the Board's legitimate expectations at the time she was terminated.

What the Court does find persuasive is a number of Plaintiff's admissions regarding her work performance. Such admissions are found in Plaintiff's response to the Board's 56.1 Statements of Material Fact. *See* ECF No. 39.

To begin, Plaintiff acknowledges that prior to being discharged some of her primary duties included processing payments owed to families of deceased employees and processing child support garnishments from employees' paychecks. Pl.'s L.R. 56.1(B) Statements Material Facts at 5-6, ECF No. 39, Page ID #1027-1028. Next, Plaintiff admits that in June 2009, "it was brought to her

attention . . . that an employee's check had been garnished in error." *Id.* at 14-15, ECF No. 39, Page ID# 1036-1037. While Plaintiff argues the error was caused by an intern who provided her the wrong social security number, Plaintiff does not dispute that the employee's paychecks were garnished improperly three times before corrective measures were taken. *Id.*

On a separate occasion, Plaintiff admits she received a notice to amend a child support order which indicated that a particular employee's child support garnishment had to be reduced. Plaintiff initialed this letter and made a note of it on the employee's garnishment record. However, when the time came to process the child support order and reduce the garnishment, Plaintiff increased it. To make matters worse, she made the error twice, causing the employee to receive less pay for two consecutive paychecks. *Id.* at 16, ECF No. 39, Page ID #1038.

After the employee noticed the increased garnishment, he contacted the Board and requested a refund. Plaintiff was required to process this refund and required to complete a payroll adjustment worksheet which provided an explanation for the refund. On this worksheet, Plaintiff indicated the refund was issued because "deductions were made on an off cycle pay period," and failed to mention anything with respect to her error in reducing his child support garnishment. *Id.* at 17, ECF No. 39, Page ID #1039. It is undisputed that these incidents occurred prior to

attention . . . that an employee's check had been garnished in error." *Id.* at 14-15, ECF No. 39, Page ID# 1036-1037. While Plaintiff argues the error was caused by an intern who provided her the wrong social security number, Plaintiff does not dispute that the employee's paychecks were garnished improperly three times before corrective measures were taken. *Id.*

On a separate occasion, Plaintiff admits she received a notice to amend a child support order which indicated that a particular employee's child support garnishment had to be reduced. Plaintiff initialed this letter and made a note of it on the employee's garnishment record. However, when the time came to process the child support order and reduce the garnishment, Plaintiff increased it. To make matters worse, she made the error twice, causing the employee to receive less pay for two consecutive paychecks. *Id.* at 16, ECF No. 39, Page ID #1038.

After the employee noticed the increased garnishment, he contacted the Board and requested a refund. Plaintiff was required to process this refund and required to complete a payroll adjustment worksheet which provided an explanation for the refund. On this worksheet, Plaintiff indicated the refund was issued because "deductions were made on an off cycle pay period," and failed to mention anything with respect to her error in reducing his child support garnishment. *Id.* at 17, ECF No. 39, Page ID #1039. It is undisputed that these incidents occurred prior to

attention . . . that an employee's check had been garnished in error." *Id.* at 14-15, ECF No. 39, Page ID# 1036-1037. While Plaintiff argues the error was caused by an intern who provided her the wrong social security number, Plaintiff does not dispute that the employee's paychecks were garnished improperly three times before corrective measures were taken. *Id.*

On a separate occasion, Plaintiff admits she received a notice to amend a child support order which indicated that a particular employee's child support garnishment had to be reduced. Plaintiff initialed this letter and made a note of it on the employee's garnishment record. However, when the time came to process the child support order and reduce the garnishment, Plaintiff increased it. To make matters worse, she made the error twice, causing the employee to receive less pay for two consecutive paychecks. *Id.* at 16, ECF No. 39, Page ID #1038.

After the employee noticed the increased garnishment, he contacted the Board and requested a refund. Plaintiff was required to process this refund and required to complete a payroll adjustment worksheet which provided an explanation for the refund. On this worksheet, Plaintiff indicated the refund was issued because "deductions were made on an off cycle pay period," and failed to mention anything with respect to her error in reducing his child support garnishment. *Id.* at 17, ECF No. 39, Page ID #1039. It is undisputed that these incidents occurred prior to

Plaintiff's 10-day suspension in December 2009.  *See* Def.'s L.R. 56.1(a)(3) Statements of Undisputed Material Facts; Ex. H at 31-37, ECF No. 34-14, Page ID# 961-970.

The next admissions the Court finds noteworthy concern the events in May 2010, two months before Plaintiff's termination.  At this time, Plaintiff admits that her supervisor provided her one-on-one training to assist her in processing payouts to families of deceased employees and admits the training included personal meetings where her supervisor explained why each individual error in her calculations occurred.  Pl.'s L.R. 56.1(B) Statements Material Facts at 27, ECF No. 39, Page ID #1049.  Despite this training, Plaintiff admits she continued to make the same errors. *Id.*  Specifically, in May 2010, Plaintiff does not dispute that she submitted eleven deceased payout calculations to her supervisor and seven of the eleven had errors that would have resulted in incorrect monies being paid out.  *Id.*

Finally, Plaintiff admits to having once erred in granting a former employee credit for a sick day in a month the employee was not working and admits to having once charged an employee vacation time for a vacation he never took.  *Id.*  The Court finds all of these admissions fatal to Plaintiff's claim of satisfactory performance.

In fact, the record is replete of other incidents which illustrate Plaintiff's less than satisfactory work performance.

Those mentioned above are the ones Plaintiff does not dispute. The Court finds these more than sufficient to establish that Plaintiff's work performance failed to meet the legitimate expectations of the Board.

While Plaintiff contends the Board's expectations were "illegitimate, arbitrary and applied disparately," the Court disagrees. Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 7. Plaintiff claims she was told that she "must type a minimum of 8,000 key strokes per hour with 100% accuracy," and this "outlandish performance requirement" was not one of the Board's policies. However, after examining the relevant testimony, it is clear that 8,000 keystrokes per hour was merely a suggestion for improvement, not a requirement. *See* Pl.'s L.R. 56.1(a)(1) Statements of Undisputed Material Fact, Ex. B2 at 14 (stating that the 8,000 keystrokes per hour with 100 percent accuracy was a "suggestion" to "get your keystrokes improved so that you can do your work faster.").

The other example Plaintiff cites as indicative of the Board's unreasonable expectations is similarly misplaced. Plaintiff contends Guzman testified that Plaintiff's child support orders should have been completed in 30 seconds. However, after reviewing the deposition, it is clear Guzman testified that suspending the garnishment from *one* individual paycheck would take 30 seconds. *See* Pl.'s L.R. 56.1(B) Statements of Material Fact, Ex. C at 6.

Thus, the Court does not find either of these examples to reflect an unreasonable requirement the Board placed on Plaintiff. *See Tench v. Abbott Laboratories*, No. 03 C 3648, 2006 WL 794765 at *4 (N.D. Ill. Mar. 23, 2006) (finding that a Plaintiff could not establish a disputed issue of fact "based upon his own assertions that he was performing well or that [] [his employer's] expectations were unreasonable.").

Even if the Court accepted Plaintiff's argument and found such examples to be unreasonable requirements, it is undeniable that the incidents for which Plaintiff was disciplined were unrelated to the alleged "unreasonable requirements." Plaintiff was not terminated or even disciplined for failing to type 8,000 keystrokes per hour with 100% accuracy or failing to complete a suspension of garnishment in 30 seconds. As such, based on the record before the Court, Plaintiff has failed to demonstrate that she performed her job satisfactorily and met the Board's legitimate expectations.

### 2. *Similarly Situated Employees Outside the Protected Class*

In light of the Court's finding that Plaintiff is unable to establish that she performed her work adequately, the Court declines to analyze whether Plaintiff can prove other similarly situated employees who were younger than her received more favorable treatment. Even if the Court determined Plaintiff could establish this element, this would not change the Court's finding

that Plaintiff has failed to establish a requisite element of her *prima facie* case.

## IV. **CONCLUSION**

For the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                Harry D. Leinenweber, Judge
                                                United States District Court

Date:4/18/2013